STATE OF NORTH CAROLINA v. RUSSELL DEAN HUNT

No. COA01-6

(Filed 7 May 2002)

**Search and Seizure— warrant—reports of heavy traffic at res-
idence—drugs not observed—affidavit insufficient**

    The trial court erred in a controlled substance prosecution by
not granting defendant's motion to suppress evidence seized pur-
suant to a search warrant where the affiant stated in his applica-
tion that drug trafficking was occurring at defendant's premises
based on citizen complaints and officer verification of heavy
vehicular traffic with short visits, there was no mention of anyone
seeing drugs on the premises, and the affidavit was insufficient to
establish probable cause.

    Appeal by defendant from judgment entered 15 August 2000 by
Judge Robert F. Floyd, Jr., in Robeson County Superior Court. Heard
in the Court of Appeals 27 November 2001.

    *Attorney General Roy Cooper, by Assistant Attorney General
Grady L. Balentine, Jr., for the State.*

    *Public Defender Angus B. Thompson, II, by Assistant Public
Defender Ronald H. Foxworth, for defendant appellant.*

McCULLOUGH, Judge.

    Defendant Russell Dean Hunt pled guilty to felonious possession
with intent to sell and deliver a controlled substance and misde-
meanor possession of drug paraphernalia on 15 August 2000. He was
sentenced to a minimum term of 9 months and a maximum term of 11
months.

    Defendant was arrested on or about 23 September 1997 by
Sergeant J. W. Jacobs of the Robeson County Sheriff's Department.
Sergeant Jacobs had gone to the magistrate the morning of the 23rd
and submitted an affidavit to establish probable cause for a search
warrant for defendant's premises. The magistrate found from the affi-
davit that probable cause existed and issued the search warrant.

    Defendant filed a motion to suppress challenging the search war-
rant on 30 January 1998. In his motion, defendant claimed that the
affidavit submitted by Sergeant Jacobs was insufficient to establish

probable cause. The hearing was not held until 11 July 2000 during the 11 July 2000 Session of the Robeson County Superior Court before the Honorable Robert F. Floyd, Jr. In the meantime, defendant had been indicted on the above charges on 8 November 1999.

At the motion to suppress hearing, Sergeant Jacobs testified as to his affidavit in support of probable cause. The following affidavit was read into evidence:

Q. Officer Jacobs, if you would, starting at the beginning of that probable cause affidavit' that you have in your hand there, read that through the close of the information you provided pursuant to the probable cause.

A. Everything after the "probable cause"; correct?

Q. That's correct.

A. "The applicant swears to the following facts to establish probable cause for the issuance of a search warrant: I, J.W. Jacobs, am a drug agent with the Robeson County Sheriff's Department Drug Enforcement Division. . . . Continuation page attached to search warrant application by Drug Agent J.W. Jacobs this date, September 23, 1997, to search the premises of Tyrone Hunt, Indian male, Russell Hunt, Indian male, Roger Dale Hunt, Indian male, John Doe, Indian male, also known às Fatboy, Jeff Locklear, Indian male. The Robeson County Sheriff's Department Drug Enforcement Division has been receiving constant complaints from concerned citizens in the Jamestown community which is located near Lumberton in Robeson County reference the illegal sale and distribution of controlled substances at the dwelling of the Defendants as described above. This dwelling is well-known as Pookie's Old Place. The citizen complaints advise that there is [sic] a lot of vehicles going to and from this dwelling. The vehicles respectively only remain at the residence for a very short period of time and then will leave. When the vehicles pull down the dirt road that leads to this dwelling, the vehicle will stop in front of the single-wide mobile home. Either the passenger or the driver of the vehicle will exit and go the (sic) front door of the dwelling. Sometimes someone will meet 'customer' "—"customer" in quotation marks—"at car door. The passenger or the driver will talk to someone at this dwelling for about three to five minutes and the drug

transaction will take place. The driver or the passenger will then leave after the drug transaction has taken place. I, Drug Agent J.W. Jacobs, with the Robeson County Sheriff's Department Drug Enforcement Division observed this dwelling for vehicular traffic on Monday, September 22, 1997. On this date I observed numerous vehicles pull down the dirt road that leads to this dwelling. Someone would exit the vehicle. Someone would usually go into the dwelling, stay about five to eight minutes, and then the vehicle would leave. From my training and experience as a drug agent with the Robeson County Sheriff's Department Drug Enforcement Division, it is of my opinion that from the numerous citizen complaints versus the heavy amount of vehicular traffic observed at this dwelling, that this concludes to be evidence of drug trafficking from this dwelling. Continuation page attached to the search warrant application by Drug Agent J.W. Jacobs, this date, September 23, 1997, to search the premises of Russell Hunt, Indian male, Roger Dale Hunt, Indian male, Tyrone Hunt, Indian male, Jeff Locklear, Indian male, John Doe, Indian male, in Robeson County, North Carolina.

Sergeant Jacobs also testified that he had been a law enforcement officer for ten years prior to October 1997, had aided in over 500 arrests, and had assisted state and federal agencies in surveillance and arrests in substance abuse cases. This information was also in Sergeant Jacobs' affidavit.

The trial court noted that citizens' complaints, by themselves, "would not be enough to rely on" in establishing probable cause for a search warrant. Thus, the trial court looked to other evidence to bolster the complaints. The trial court looked to see "if any investigation or further verified complaint, reliable informant was used, or if the officer himself made any personal investigation."

In ruling that the affidavit did provide probable cause, the trial court reasoned:

It's noted that the citizens' complaints, there's not a time indication as to the citizens' complaints except it says "constant complaints" of concerned citizens. [Sergeant Jacobs] also went out on September 22nd, '97, the day before the search was done, the day before procuring the search warrant, and made the observations as set forth—specifically, he said he verified what the citizens had complained of, observed numerous vehicles pull down the dirt

road that leads to the dwelling, someone would exit the vehicle, someone would usually go into the dwelling and stay about five to eight minutes, and then the vehicle would leave. And therefore, that is not a conclusory statement. It is a statement of fact of what he did. And based upon his factual statement, he made a conclusion based on his experience and his observation as to what he thought was evidence to support drug trafficking at the dwelling. That, taken together with the citizens' complaints, I think he verified the citizens' complaints, and the Court denies the motion to suppress.

The trial court held the citizens' complaints that had been verified by a law enforcement officer, combined with his belief that the activity was drug related due his law enforcement experience, constituted probable cause to search the residence for drugs. Defendant appeals from this ruling.

Defendant's sole assignment of error is that the trial court erred in denying defendant's motion to suppress evidence obtained pursuant to a search warrant issued by a neutral and detached magistrate based on facts insufficient to support the issuance of the search warrant.

I.

Defendant contends that the trial court erred in denying his motion to suppress evidence because the affidavit supporting the application for the search warrant was insufficient to establish probable cause. Defendant claims the affidavit was insufficient because it contained unsupported conclusory statements by the affiant. The affiant based his conclusion that drug trafficking was occurring at the dwelling on complaints of concerned, anonymous citizens of heavy vehicular traffic with very short visits, officer verification by surveillance thereof, and his lengthy experience as a drug agent.

"A search warrant may be issued only upon a finding of probable cause for the search. This means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the object sought and that such object will aid in the apprehension or conviction of the offender." *State v. Crisp*, 19 N.C. App. 456, 458, 199 S.E.2d 155, 156 (1973).

In *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984), North Carolina adopted the "totality of the circumstances" test for examining whether information properly before the magistrate provides a

sufficient basis for finding probable cause and issuing a search warrant. The standard, established by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, *reh'g denied*, 463 U.S. 1237, 77 L. Ed. 2d 1453 (1983), is as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238-39, 76 L. Ed. 2d at 548; *Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58. When reviewing a magistrate's determination of probable cause, this Court must pay great deference and sustain the magistrate's determination if there existed a substantial basis for the magistrate to conclude that articles searched for were probably present. *Id.*

Defendant contends that the facts in this case are similar to the facts in *Crisp*, 19 N.C. App. 456, 199 S.E.2d 155. We agree. The *Crisp* case was controlled by *State v. Campbell*, 282 N.C. 125, 191 S.E.2d 752 (1972). These cases hold that affidavits which implicate the premises to be searched solely as a conclusion of the affiant are fatally defective. *Crisp* deals directly with an affidavit somewhat similar with the one before us in that it relies on the affiant's surveillance of heavy vehicular traffic.

In *Crisp*, the officers obtained a search warrant for defendant's residence because they believed drugs were contained therein. During the subsequent search, the officers found marijuana in the house. Defendant sought to suppress the evidence on the grounds that the affidavit was insufficient to justify the issuance of a search warrant. The affidavit read, in pertinent part:

> "The facts which establish probable cause for the issuance of a search warrant are as follows: on 12-19-72 Deputy Roy Chaney, Union County Sheriff Dept. stopped Dana Michael Conlon for improper Equopment, [*sic*] to wit: no lights on vehicle, and after placing Dana Michael Conlon in his, Deputy Chaney's vehicle, he smelled the strong odor of what he believes to be Marijuana. Upon searching Dana M. Conlon, deputy Chaney found over five

grams of Marijuana, and upon searching the vehicle that Dana M. Conlon was operating, deputy Chaney found over five more grams of Marijuana. Further investigation by deputy Chaney revealed that Dana M. Conlon has been living at the above location for the passed [*sic*] three or four months. During the passed [*sic*] three or four months deputy Chaney has been observing heavy traffic eterning [*sic*] and leaving the above described location. Deputy Chaney states also, that various vehicles, cars and trucks, are in and out at various times of the day and night. But mostly at night. After stopping Dana M. Conlon and finding Controlled Substances on his person and in his vehicle, and after personally observing the various traffic in and out of the above described location, it is the belief of this affiant that drugs are being contained in the above location."

*Crisp*, 19 N.C. App. at 457-58, 199 S.E.2d at 156. The Court found the affidavit to be fatally defective because it was devoid of underlying circumstances from which probable cause could be determined. Indeed, the Court said:

The affidavit implicates those premises solely as a conclusion of the affiant. Nowhere in the affidavit is there any statement that marijuana was ever possessed or sold in or about the dwelling to be searched. Nowhere in the affidavit are any underlying circumstances detailed from which the magistrate could reasonably conclude that the proposed search would reveal the presence of any illegal drug in the dwelling. The inference the State seeks to draw from the contents of this affidavit does not reasonably arise from the facts alleged. Nothing in the affidavit in the instant case affords a reasonable basis upon which the issuing magistrate could conclude that any illegal possession or sale of narcotic drugs had occurred or was occurring on the premises to be searched.

*Crisp*, 19 N.C. App. at 458-59, 199 S.E.2d at 156; *State v. Campbell*, 282 N.C. 125, 130, 191 S.E.2d 752, 757 (1972). Thus, *Crisp* stands for the proposition that unusual traffic at a residence may not, in itself, constitute probable cause to justify the issuance of a warrant authorizing a search of that residence for drugs. *See State v. Ford*, 71 N.C. App. 748, 752, 323 S.E.2d 358, 361, *appeal dismissed, disc. review denied*, 313 N.C. 511, 329 S.E.2d 397 (1985). *Ford*, relying on *Crisp*, and decided subsequent to *Gates*, held that unusual traffic at a residence in itself does not constitute probable cause.

The very same can be said of the affidavit in this case as was said by the Court of the *Crisp* affidavit. All that the affidavit offers are complaints from citizens suspicious of drug activity in a nearby house. There is no mention of anyone ever seeing drugs on the premises. The citizens only reported heavy vehicular traffic to the house. The officer verified the traffic. His verification, as the trial court found, was not a conclusion. What was a conclusion was the determination of the officer, based on his experience and the vehicular traffic, that drug trafficking was taking place. "The inference the State seeks to draw from the contents of this affidavit does not reasonably arise from the facts alleged." *Crisp*, 19 N.C. App. at 458, 199 S.E.2d at 156.

We note that this Court has ruled that probable cause may be established through timely and detailed information by an unfamiliar confidential informant when some of that information has been verified. *State v. Barnhardt*, 92 N.C. App. 94, 373 S.E.2d 461, *disc. review denied*, 323 N.C. 626, 374 S.E.2d 593 (1988). The *Barnhardt* case also held that "[t]he experience and expertise of the affiant officer may be taken into account in the probable cause determination, so long as the officer can justify his belief to an objective third party." *Barnhardt*, 92 N.C. App. at 97, 373 S.E.2d at 462.

The informant in *Barnhardt* had seen drugs inside the house and could describe them. He gave a detailed description of the outside of the house and the suspect. He also gave a detailed description of his knowledge of drugs. The officers verified the informant's description of the house and the identity of the suspect. These facts, along with the officer's experience, were held to be a substantial basis for finding probable cause.

The facts in the present case do not rise to the level of those in *Barnhardt*. All the citizen informants report is the traffic; there was nothing else to verify. No one ever saw drugs on the premises.

We conclude that defendant's motion to suppress should have been allowed.

Reversed and remanded.

Judges GREENE and CAMPBELL concur.