IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-984

Filed 7 May 2024

Durham County, No. 19CRS52372

STATE OF NORTH CAROLINA

v.

PHILLIP EUGENE BOYD

Appeal by defendant from order entered 6 March 2023 by Judge Josephine Kerr Davis in Durham County Superior Court. Heard in the Court of Appeals 2 April 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General, Tamara Zmuda, for the state.*

> *Grace, Tisdale & Clifton, P.A., by Michael A. Grace, for the defendant-appellant.*

TYSON, Judge.

Phillip Eugene Boyd ("Defendant") pleaded guilty to two counts of attempted drug trafficking, one for cocaine and for marijuana, reserving his right to appeal denial of his motion to suppress from a judgment entered upon a plea of guilty. We affirm the trial court's ruling on Defendant's motion to suppress.

## I.   Background

Durham Police Investigator C.B. Franklin applied for and received an

anticipatory search warrant on 10 April 2019, authorizing the search of property located at 3712 Lucknam Lane, Durham, N.C. 27707 ("Lucknam Lane"). Investigator Franklin's application and affidavit laid out the following:

In August 2018, Durham Vice and Narcotics Unit Investigators received information from a confidential informant ("CI"), asserting he had purchased trafficking-level quantities of cocaine from a man named "Pete" and from "Pete's" brother. Investigators later determined "Pete" was a man named Frederick Earl Smith ("Smith") and Defendant is his brother. The CI asserted Smith had acted as a middleman. The CI would contact Smith to request drugs. Smith would obtain the drugs from Defendant. Smith would schedule a meeting at a predetermined location, often a gas station, with the CI. Smith would often arrive in either a Ford F-150 pick-up truck or a Lexus Sedan vehicle, with Defendant driving the vehicle. Smith was the only individual to exit the vehicle to perform the transaction. While the CI only interacted with Smith, he claimed to have seen Defendant present on multiple occasions during the transactions, and asserted he would be able to visually identify him.

In October 2018, Durham Police Investigators performed a controlled buy, wherein officers directed the CI to contact Smith and arrange a buy. Smith arrived at the buy site in a newer model white Ford F-150 with the North Carolina license plate PCM-****. Smith exited the passenger side of the vehicle, approached the CI, and conducted the cocaine sale before returning to the vehicle. Investigators

identified the vehicle as registered to Marietta Poole Boyd, Defendant's wife, with the registered address listed as 3712 Lucknam Lane. Investigator Franklin also confirmed the Ford F-150 pick-up truck was being parked and kept at Lucknam Lane.

On 12 March 2019, investigators applied for and received a tracking tag order to be installed on the Ford F-150 pick-up registered to Defendant's wife. The transmitted information indicated the Ford pick-up made frequent short stops at gas stations, often located in high crime and high narcotic areas, throughout Durham. This activity was consistent with the CI's previous statements regarding the use of gas stations as drug sales and delivery meeting sites. Additionally, the Ford pickup would often return to Lucknam Lane for notably short periods of time between stops before leaving again.

On 5 April 2019, investigators conducted direct surveillance of the Ford pickup using four two-man teams in unmarked police vehicles. Investigators were able to identify Defendant as the driver of the Ford F-150 pickup as he left Lucknam Lane. Investigators followed Defendant while he performed numerous short stops, often at gas stations, throughout the Durham area. Despite close surveillance, investigators did not directly witness any drug sales, but they confirmed much of the "short stay traffic" appeared to be drug related.

Investigators contacted the CI to direct the setup of another controlled buy. The CI arranged a meeting with Smith to purchase 9 ounces of cocaine for $8,700. Smith agreed to the sale and told the CI he would call on 10 April 2019 when he was

ready to deliver and complete the sale.

Based upon the facts above, investigators believed controlled substances were being stored at Lucknam Lane. Officers applied for an anticipatory search warrant to search the property located at Lucknam Lane, if either Defendant or Smith completed the controlled buy expected to occur on 10 April 2019.

The arranged meeting with Smith occurred on 10 April 2019. Investigators were able to confirm Defendant was present and driving the white Ford F-150 pickup. Investigators executed the search warrant and law enforcement seized large amounts of U.S. currency, a currency counter, cocaine, marijuana, and assorted drug paraphernalia. Defendant was subsequently indicted on trafficking in cocaine and marijuana.

On 13 November 2019, Defendant moved to suppress evidence deriving from the anticipatory search warrant issued for the property located at Lucknam Lane. The trial court informed the parties of its denial of Defendant's motion to suppress on 8 December 2022 and filed the order 6 March 2023. Defendant preserved his right to appeal by objecting to the trial court's denial of his motion to suppress and entered a plea of guilty on 5 April 2023. Defendant gave an oral notice of appeal the same day and filed a written notice of appeal on 14 April 2023.

## II. Jurisdiction

"An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea

of guilty." N.C. Gen. Stat. § 15A-979(b) (2023). Jurisdiction lies with this Court pursuant to N.C. Gen. Stat. § 7A-27(b) (2023).

### III. Motion to Suppress

Defendant argues the trial court erred by denying his motion to suppress evidence obtained from an anticipatory search warrant and asserts the search warrant lacked probable cause to support the warrant to search his residence.

### A. Standard of Review

This Court's review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982).

"[C]onclusions of law are reviewed *de novo* and must be legally correct." *State v. Campbell*, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, (2008) (citations omitted). "We review *de novo* a trial court's conclusion that a magistrate had probable cause to issue a search warrant." *State v. Worley*, 254 N.C. App. 572, 576, 803 S.E.2d 412, 416 (2017).

### B. Analysis

Defendant argues Investigator Franklin's affidavit and application failed to support a finding of probable cause to authorize the search of Defendant's residence, located at Lucknam Lane. We disagree.

Both the State and Federal Constitutions protect against unreasonable searches and seizures and require that warrants only be issued upon a showing of probable cause. *See* U.S. Const. amend. IV; N.C. Const. art. I, § 20. To determine whether probable cause existed, courts examine the totality of the circumstances known to the magistrate at the time the search warrant was issued. *State v. Arrington*, 311 N.C. 633, 641, 319 S.E.2d 254, 259 (1984).

Under the "totality of the circumstances" test, an affidavit is sufficient to support probable cause "if it supplies reasonable cause to believe [ ] the proposed search . . . probably will reveal the presence upon the described premises of the items sought and that those items will aid in the apprehension or conviction of the offender." *State v. Howard*, 259 N.C. App. 848, 851, 817 S.E.2d 232, 235 (2018) (citing *Arrington*, 311 N.C. at 636, 319 S.E.2d at 256).

Further, "this Court must pay great deference and sustain the magistrate's determination [of probable cause] if there exist[s] a substantial basis . . . to conclude [the] articles searched for were probably present." *State v. Hunt*, 150 N.C. App. 101, 105, 562 S.E.2d 597, 600 (2002). Lastly, a finding of probable cause does not require certainty, but rather only a substantial chance of criminal activity. *State v. McKinney*, 368 N.C. 161, 165, 775 S.E.2d 821, 825 (2015).

As is required for when an officer seeks a search warrant of a residence in connection to illegal activity observed outside the residence, "the facts set out in the supporting affidavit must show some connection or nexus linking the residence to

illegal activity. Such a connection need not be direct, but it cannot be purely conclusory." *State v. Bailey*, 374 N.C. 332, 335, 841 S.E.2d 277, 280 (2020).

The Supreme Court of North Carolina recently determined a search warrant authorizing the search of a residence was supported by probable cause, even though the officer's affidavit only alleged an occupant of the residence participated in a sale of illegal drugs earlier in the day in another location. *Id.*, 374 N.C. at 338, 841 S.E.2d at 282. In *Bailey,* a detective witnessed the driver of a Jeep vehicle, the occupants of which he was familiar with due to previous drug activity, pull into an isolated parking lot. *Id.* at 333, 841 S.E.2d at 279. A woman exited another vehicle and entered the Jeep for roughly 30 seconds before returning to her vehicle. *Id.* Based upon his training, the detective believed a narcotics transaction had occurred. *Id.*

The detective followed the woman's vehicle and pulled her over after several traffic violations. *Id.* The woman admitted she had purchased and possessed heroin. *Id.* While this was occurring, another detective followed the Jeep back to, what the detectives knew to be, the occupant's residence. *Id.* Based on the information above, the detectives obtained a search warrant for the property. *Id.*

The key factor, which supported the search of the residence in *Bailey,* was the detectives' ability to demonstrate some nexus between the residence and the criminal activity. *Id.* at 338-39, 841 S.E.2d at 282. The Court explained it is not necessary for the officers to show direct criminal activity at the residence, but officers do need to

demonstrate more than simply asserting the defendant visits or resides at the property. *Id.*

Here, Investigator Franklin's affidavit and application supports the conclusion of a substantial chance of evidence related to drug trafficking being present at Defendant's residence, located at Lucknam Lane. Investigator Franklin's application contains several key pieces of information:

1) Investigators identified the white Ford F-150 pickup used in an illegal drug sale with the CI as being owned by Defendant's wife and registered at Lucknam Lane;

2) Investigators confirmed cocaine was being trafficked and sold out of the Ford F-150 pickup;

3) The Ford F-150 pickup was kept at Lucknam Lane;

4) Both Defendant and Marietta Poole Boyd, Defendant's wife, resided at Lucknam Lane;

5) The Ford F-150 pickup made frequent, short stops at gas stations and convenience stores throughout the Durham area, often located in high drug trafficking areas, and often left from and returned to Lucknam Lane in between said stops;

6) Defendant was observed living and operating out of the residence located at Lucknam Lane and in the manner described above;

7) Defendant had a known history of dealing drugs; and,

8) The CI's statements were consistent with the evidence independently collected by the investigators.

As in *Bailey*, these facts support a reasonable inference that Defendant was engaged in drug trafficking and establishes a nexus between the drug trafficking and Defendant's residence. *Id.* Defendant's frequent and short-in-time returns to Lucknam Lane in between his other stops throughout Durham, which inspectors believed were drug related, supplied a connection or nexus between the illegal activity committed outside of Lucknam Lane by Defendant and at the residence itself. This reasonable inference and nexus supports the conclusion that a substantial chance existed of evidence of drug trafficking being present at Defendant's residence. *Id.* Defendant's arguments are overruled

## IV. Conclusion

Under the totality of the circumstances and with deference given to the magistrate's determination of probable cause, we hold the trial court properly denied Defendant's motion to suppress. Defendant presented no prejudicial errors in his arguments on appeal. The trial court's order is affirmed. *It is so ordered.*

AFFIRMED.

Judges STROUD and GORE concur.